IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **DIANA TRUE,**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**DELTA AIRLINES, INC., DESHEILA BROWN, GIANNA LATRICE JOHNSON-JACKSON, REBECCA HARDING PROVOST,**<br><br>    **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:21-CV-433-DAK-DBP<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Dustin B. Pead |

  This matter is before the court on Defendant Desheila Brown's Motion to Dismiss Under Rule 12(b)(2) and/or 12(b)(5) [ECF No. 24]. On June 8, 2022, the court held a hearing on the motion via Zoom videoconferencing due to the Covid-19 pandemic. James E. Ji represented Defendant Desheila Brown, David J. Holdsworth represented Plaintiff Diana True, and David Dibble represented Defendant Delta Airlines, Inc. At the hearing, Plaintiff made an oral motion to dismiss the individual defendants under Rule 4(m) of the Federal Rules of Civil Procedure. The court took the matters under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

  Plaintiff Diana True and Defendant Desheila Brown were both previously employed as flight attendants for Delta Airlines. In early June 2020, True made a post on Facebook which stated:

1

> It's a holiday? This was 1865!!!!   It's over a century old and people are still talking about it.   It's time for ALL Black and White people to let this go.   It's time for everyone to pull together and not look at the color of a person's skin.   Did you know that white people get criticized and discriminated against also?   Did you realize that handicap and disabled people whether they're black or white get laughed at and criticized and demonstrated against?   Everyone needs to grow up and let go of the past it's over a century year old.   And for you black people stop thinking that white people owe you because white people were enslaved too.   If you want to do something right then get an education, stop looting and rioting in the streets and stealing things that not yours, quit shooting each other and killing black on top of black, children have been shot, drug cartels that are black that are shooting their own people, they are selling drugs to these young kids they are killing and getting these kids hooked on drugs.   I'm not sure what's wrong with society today except for everyone wants to blame everyone else this is a constant society a blame on top of blame.   If you live in a run-down house soap and water is free to clean it up.   If you don't have a god job then get a better education then you'll be . . . [cut off in exhibit] to pay you money because that's not the way it's going to work.   You already get help with education above the white people, you already get help with starting out of business I have a person that I know because he's black he got a million dollars to start his business up.   How is that fair above white people? So you all need to grow up and let the past go because the white people don't owe you anything."

Plaintiff admits that she made the post but claims that she did not create all of the content in that post.   She states that her account was hacked, and the hacker included racially offensive material in the post.   She also asserts that regardless of content, she should not have been disciplined for the post because the post was not made while at a company location, on company time, and did not mention Delta or that she was employed at Delta.

On June 5, 2020, in the wake of the national protests resulting from the killing of George Floyd, Delta's CEO issued a memo to all employees stating that the company was taking a stand against racism and injustice in the community and workplace.   The memo also encouraged employees to report incidents of racism and discrimination.

On or before June 11, 2020, a fellow Delta flight attendant sent Defendant Desheila Brown a screenshot of Plaintiff's public Facebook post.   The post was being circulated among Delta

2

employees. Brown did not know and had never met Plaintiff. However, as an African American woman, Brown states that she found Plaintiff's post highly upsetting, offensive, insulting, and racist. On June 11, 2020, Brown posted the screenshot of Plaintiff's post on her Facebook Timeline and wrote in the caption for that photo that she was calling out her co-workers who were making racists posts. She also stated that, in her opinion, people who make such posts, including Plaintiff, should be fired. However, Brown did not report the post to a supervisor or the human resources division at Delta. Brown did not mention Delta in her post.

Over the next several days, numerous people called out Plaintiff for racism. Plaintiff then made another post on Facebook stating that her account had been hacked and that the earlier post was not hers. Brown received a screenshot of the second post from another Delta employee. Brown states that she did not believe Plaintiff had been hacked because the comments in the post were consistent with other racially charged posts and comments Plaintiff was publicly displaying on Facebook and because Plaintiff left the post up for several days. Brown wrote on her Facebook Timeline about Plaintiff's latest post, stating that Plaintiff was a liar and simply afraid of being terminated due to the content of the first post.

Plaintiff alleges that Brown and other African American Delta employees targeted her and other white Delta employees in an effort to get them disciplined or terminated. Plaintiff claims that Delta did not properly investigate her allegations about being targeted and did not take prompt and effective action to remedy it. Despite Plaintiff's explanation to Delta regarding the first Facebook post, Delta terminated her employment.

Although Plaintiff asserts that Delta did not investigate the incident and did not discipline Brown, Delta contacted Brown and conducted an investigation into whether Brown had violated Delta's social media policy. Two Delta managers called Brown at her home in Georgia about her

Facebook postings involving Plaintiff and two other Delta employees Brown had called out for making racist posts. In August 2020, Delta issued Brown a written disciplinary action referred to as a "written coaching" and placed her on probation for 18 months for violating the company's social media policy. After being disciplined, Brown deleted all her Facebook posts dealing with other Delta employees. She is now unable to access any of those posts. Brown retired from Delta on September 1, 2021. Brown did not know whether Delta disciplined or terminated Plaintiff.

Brown lives in Georgia, has lived there for 19 years, and worked for Delta based in Georgia, where Delta's headquarters are located. All her Facebook posts and comments involving Plaintiff were made while she was in Georgia. Brown did not call or email anyone at Delta to report Plaintiff. Brown did not call or email Plaintiff. Brown has never had any direct communication with Plaintiff and has no personal knowledge of where she lives. Brown and other Delta flight attendants discussed in Facebook comments that Plaintiff might be based in Salt Lake City, but they did not know for sure. Brown has never worked with Plaintiff and did not mention that she or Plaintiff worked for Delta. It is also not apparent from Brown's Facebook account that she works for Delta.

In July 2021, Plaintiff filed this lawsuit, asserting claims against Delta for racial discrimination and retaliation and asserting a claim against Brown for interference with a contractual relationship. Although Plaintiff acknowledges that she was an at-will employee, she claims that she had a reasonable expectation of continued employment and Brown intentionally interfered with that "contractual" relationship for an improper purpose (to get her fired) by improper means (publicizing and/or manipulating posts on Facebook). Plaintiff mailed the Summons and Complaint to Brown in Georgia. However, she did not include a waiver and the

postal carrier did not obtain a signature on the certified mail label. Brown found the package in her mailbox. She never signed for the package, and it was never presented to her for acceptance and signature. Brown's home security camera shows that on the day of the delivery the postman did not exit the postal vehicle or come to the door for a signature. Brown brought the pending Motion to Dismiss, challenging personal jurisdiction in Utah and service.

## DISCUSSION

### Brown's Motion to Dismiss

Brown moves to dismiss this case for lack of personal jurisdiction under FRCP 12(b)(2) and improper service under FRCP 12(b)(5). Acknowledging the strength of Brown's motion, Plaintiff made an oral motion at the hearing to have the case dismissed without prejudice under FRCP Rule 4(m). Brown's counsel agreed to such dismissal.

The court agrees with the parties that this case can be dismissed under Rule 4(m) for failing to timely serve Brown. "The effectiveness or validity of service of process is analyzed under Utah law." *Conlin Enter. Corp. v. Snews LLC,* No. 2:07-CV-922, 2008 WL 803041, *2 (D. Utah Mar. 24, 2008). Under Utah law, a complaint can only be served on someone by mail if "the defendant . . . signs a document indicating receipt." *Id.* Plaintiff's attempted service of Brown was improper under the governing service rules.

On January 26, 2022, the court gave Plaintiff until March 14, 2022, to serve the Summons and Complaint on all the individual defendants and indicated that no further extensions would be granted. Plaintiff failed to properly serve any of the individual defendants by that date. In response to a May 31, 2022 Order to Show Cause, Plaintiff acknowledged that the proper course of action at this stage of the case would be for the court to dismiss the action without prejudice against the other individual defendants. Plaintiff then agreed at the hearing that this was also the proper

course of action with respect to Brown because the attempted service of her was not in accordance with the rules.

The court notes, however, that while the postal service's failure to obtain a signature on a certified mail package may have been a mistake that would allow Plaintiff to try to demonstrate good cause for another attempt at service, there is no point in extending the deadline for Plaintiff to attempt proper service against Brown because there is no specific personal jurisdiction over Brown in Utah with respect to her Facebook posts.  "[P]osting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever . . . the subject of the posting may reside."  *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011).  For internet postings to give rise to personal jurisdiction, they must be "directed specifically at a forum state audience or otherwise make the forum state the focal point of the message."  *Shrader*, 633 F.3d at 1244.

In this case, Brown's posts were not directed at Utah.  They related to differing opinions as to racism on a national level.  Even to the extent that they related to Plaintiff's truthfulness, they were not directed to Utah.  Brown did not know that Plaintiff lived in Utah and did not direct her post to a Utah audience.  Brown made posts on her own Facebook Timeline, and they were visible to Brown's Facebook friends across the country.  Nothing in Brown's Facebook posts related to Utah.  Brown did not comment on Plaintiff's Facebook page.  Brown never communicated directly with Brown.  She did not know her, had never worked with her, and did not know where she lived.  While Brown stated in her post that she thought Plaintiff should be fired, Brown did not contact Delta about Plaintiff's post or talk to anyone at Delta about terminating Plaintiff.  The fact that Brown knew that Plaintiff worked for Delta is inconsequential.  Delta is headquartered in Atlanta, Georgia and has operations across the United

States.

The fact that Plaintiff allegedly suffered harm in Utah is insufficient to confer personal jurisdiction over Brown in Utah.  In *Shrader*, the court explained that "plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state.  *Id.* at 1245.  Several cases in this district have dealt with allegedly defamatory statements against an individual, which allegedly targeted an individual, and the courts nonetheless held that specific personal jurisdiction did not exist because the postings did not focus on the forum state.  *Buck v. Parra*, No. 2:13-CV-343-TS, 2013 WL 6672437, *2 (D. Utah Dec. 18, 2013) (unpublished) (out-of-state defendant posted allegedly defamatory internet messages against plaintiff); *Dziurkiewicz v. Dziurkiewicz*, No. 2:12-CV-907-RJS, 2016 WL 3199069, *3 (D. Utah May 23, 2016) (unpublished) ("Plaintiffs allege that [out-of-state] Defendant is a member of a website complaint board and has posted statements on the internet attacking Plaintiff's character and reputation."); *Torres v. Western Journal LLC*, No. 2:19-CV-175-BSJ, 2020 WL 12182459, *1 (D. Utah Aug. 5, 2020) (unpublished) (claiming defamation, false light invasion of privacy, intentional infliction of emotional distress, and tortious interference based on out-of-state defendant's internet publication of article concerning a tweet by Plaintiff).

Plaintiff bears the "burden of establishing personal jurisdiction over [a defendant]." *Bathcrest, Inc. v. Safeway Safety Step, Inc.*, 417 F. Supp. 2d 1236, 1239 (D. Utah 2006).  The court concludes that she has not met that burden.  Accordingly, the court concludes that the lack of jurisdiction demonstrates that there is no point in allowing Plaintiff additional time to perfect service against Brown.

## CONCLUSION

Based on the parties' agreement, the court dismisses this action against all the individual defendants without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Accordingly, Plaintiff's oral motion is GRANTED, and Defendant Brown's Motion to Dismiss is GRANTED.

DATED this 13th day of June, 2022.

BY THE COURT

_____
DALE A. KIMBALL
United States District Judge